UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

AIMEE O'NEIL and M.O.,

                         Plaintiffs,

v.                                                            5:09-CV-1133
                                                              (GTS/DEP)

CATHERINE BEBEE; and
OSWEGO CITY SCHOOL DISTRICT,

                         Defendants.
_____

APPEARANCES:

AMY O'NEIL
   Plaintiff, *Pro Se*
PO Box 53
Minetto, NY 13115

HON. GLENN T. SUDDABY, United States District Judge

## DECISION and ORDER

Currently before the Court in this a *pro se* civil rights action filed by Aimee O'Neil

("Plaintiff") is her motion to proceed *in forma pauperis*, her motion for a stay, and her two

separate letter requests.  (Dkt. Nos. 1, 2, 3, 4, and 5.)  For the reasons discussed below,

Plaintiff's motion to proceed *in forma pauperis* is granted; her Complaint is *sua sponte*

dismissed with prejudice due to its frivolous, pursuant to 28 U.S.C. § 1915(e)(2)(B); her motion

for a stay and two letter requests are denied as moot; and she is directed to show cause, within

thirty (30) days of the date of this Decision and Order, as to why the Court should not issue an

Order prohibiting her from filing any future *pro se* actions in this Court without prior leave of

the Court.

## I.   PLAINTIFF'S MOTION TO PROCEED *IN FORMA PAUPERIS*

After carefully reviewing Plaintiff's papers in support of her motion to proceed in forma pauperis, the Court finds that she qualifies for *in forma pauperis* status.  (*See* Dkt. No. 2.)  As a result, the Court grants Plaintiff's motion to proceed *in forma pauperis*.[1]

## II.   REVIEW OF PLAINTIFF'S COMPLAINT

### A.   Court's Duty to *Sua Sponte* Review Complaint

Pursuant to 28 U.S.C. § 1915(e), when a plaintiff seeks to proceed *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B).[2]  Thus, there is a responsibility on the Court to determine that a complaint may be properly maintained in the District before it may permit a plaintiff to proceed with an action *in forma pauperis*.  *Id*.

In determining whether an action is frivolous, the Court must look to see whether the complaint lacks an arguable basis in law or in fact.  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  Although the Court has a duty to show liberality towards *pro se* litigants, *Nance v.*

---

[1]   Plaintiff should note that, although her motion to proceed *in forma pauperis* has been granted, she would still be required to pay other fees that she incurred in the action, including copying and/or witness fees, if this action were to proceed.

[2]   *See also Monestime v. FCC*, 09-CV-0296 (N.D.N.Y. Mar. 24, 2009) (Suddaby, J.) ("[F]ederal courts may (and have) *sua sponte* dismissed *pro se* civil rights complaints (in *in forma pauperis* proceedings) where the allegations therein are fantastic, fanciful, delusional, and/or paranoid.  Indeed, this Court has done so."); *Henderson v. Clover Field*, 08-CV-0504, 2008 WL 2405705 (N.D.N.Y. June 11, 2008) (McCurn, J., adopting Report-Recommendation of Lowe, M.J.); *Mercier v. Mercier*, 07-CV-0523, 2007 WL 1582267, at *1-2 (N.D.N.Y. May 25, 2007) (Kahn, J.).

2

*Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam), and extreme caution should be exercised in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and the parties have had an opportunity to respond, *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983), there is a responsibility on the Court to determine that a claim is not frivolous before permitting a plaintiff to proceed with an action *in forma pauperis* in order to prevent abuses of the process of the Court, *Harkins v. Eldredge*, 505 F.2d 802, 804 (8th Cir. 1974), as well as discourage the waste of judicial resources.

### C.    Legal Standard Governing Dismissals for Failure to State Claim

It has long been understood that a dismissal for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6), may be based on either or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim. *Jackson v. Onondaga County*, 549 F. Supp.2d 204, 211, nn. 15-16 (N.D.N.Y. 2008) (McAvoy, J., adopting Report-Recommendation on *de novo* review) [citations omitted].

With regard to the first ground, Fed. R. Civ. P. 8(a)(2) requires that a pleading contain "a short and plain statement of the claim *showing* that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2) [emphasis added].  By requiring this "showing," Fed. R. Civ. P. 8(a)(2) requires that the pleading contain a short and plain statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests."  *Jackson*, 549 F. Supp.2d at 212, n.17 [citations omitted].  The main purpose of this rule is to "facilitate a proper decision on the

merits." *Id*. at 212, n.18 [citations omitted].[3]

The Supreme Court has long characterized this pleading requirement under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal," and has repeatedly rejected judicially established pleading requirements that exceed this liberal requirement. *Id*. at 212, n.20 [citations omitted]. However, even this liberal notice pleading standard "has its limits." *Id*. at 212, n.21 [citations omitted]. As a result, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet this liberal notice pleading standard. *Id*. at 213, n.22 [citations omitted]; *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-52 (2009).

Most notably, in *Bell Atlantic Corp. v. Twombly*, the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007). In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 127 S. Ct. at 1968-69. Rather than turning on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim. *Id*. at 1965-74. The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the

---

[3]      *See also Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995) ("Fair notice is that which will enable the adverse party to answer and prepare for trial, allow the application of res judicata, and identify the nature of the case so it may be assigned the proper form of trial.") [citation omitted]; *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988) ("[T]he principle function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial.") [citations omitted].

pleading must contain at least "some factual allegation[s]." *Id*. at 1965 [citations omitted].  More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id*. [citations omitted].[4]

As have other Circuits, the Second Circuit has recognized that the clarified plausibility standard that was articulated by the Supreme Court in *Twombly* governs *all* claims, including claims brought by *pro se* litigants (although the plausibility of those claims is to be assessed generously, in light of the special solicitude normally afforded *pro se* litigants).[5]  It should be emphasized that Fed. R. Civ. P. 8's plausibility standard, explained in *Twombly*, was in no way retracted or diminished by the Supreme Court's decision (two weeks later) in *Erickson v. Pardus*, in which (when reviewing a *pro se* pleading) the Court stated, "*Specific* facts are not necessary" to successfully state a claim under Fed. R. Civ. P. 8(a)(2).  *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007) [citation omitted; emphasis added].  That statement was merely an abbreviation of the often-repeated point of law–first offered in *Conley* and repeated in *Twombly*–that a pleading

---

[4]        *See also Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007) ("[The Supreme Court] is not requiring a universal standard of heightened fact pleading, but is instead requiring a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*.").

[5]        *See, e.g.*, *Jacobs v. Mostow*, 271 F. App'x 85, 87 (2d Cir. March 27, 2008) (in *pro se* action, stating, "To survive a motion to dismiss, a complaint must plead 'enough facts to state a claim to relief that is plausible on its face.'") [citation omitted] (summary order, cited in accordance with Rule 32.1[c][1] of the Local Rules of the Second Circuit); *Boykin v. KeyCorp.*, 521 F.3d 202, 215-16 (2d Cir. 2008) (finding that borrower's *pro se* complaint sufficiently presented a "*plausible* claim of disparate treatment," under Fair Housing Act, to give lenders fair notice of her discrimination claim based on lenders' denial of her home equity loan application) [emphasis added].

need not "set out *in detail* the facts upon which [the claim is based]" in order to successfully state a claim. *Twombly*, 127 S. Ct. 1965, n.3 (citing *Conley*, 355 U.S. at 47) [emphasis added].  That statement did not mean that all pleadings may achieve the requirement of "fair notice" without ever alleging any facts whatsoever.  Clearly, there must still be enough fact set out (however set out, whether in detail or in a generalized fashion) to raise a right to relief above the speculative level to a plausible level.[6]

Finally, in reviewing a complaint for dismissal under Fed. R. Civ. P. 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor.  This standard is applied with even greater force where the plaintiff alleges civil rights violations and/or where the complaint is submitted *pro se*.  However, while the special leniency afforded to *pro se* civil rights litigants somewhat loosens the

---

[6]    For example, in *Erickson*, the Supreme Court held that, because the plaintiff-prisoner had alleged that, during the relevant time period, he suffered from hepatis C, he had alleged facts plausibly suggesting that he possessed a sufficiently serious medical need for purposes of an Eighth Amendment claim of inadequate medical care.  *Erickson*, 127 S. Ct. at 2199-2200.  Expressed differently, the Court held that such a plaintiff need not *also* allege that he suffered an independent and "substantial injury" as a result of the termination of his hepatis C medication (a requirement that had been imposed by the district court).  This point of law is hardly a novel one, which is presumably why the *Erickson* decision was relatively brief.  Prior to the Supreme Court's decision, numerous decisions, from district courts within the Second Circuit alone, had found that suffering from hepatitis C constitutes having a serious medical need for purposes of the Eighth Amendment.  *See, e.g., Rose v. Alvees*, 01-CV-0648, 2004 WL 2026481, at *6 (W.D.N.Y. Sept. 9, 2004); *Verley v. Goord*, 02-CV-1182, 2004 WL 526740, at *10 n.11 (S.D.N.Y. Jan. 23, 2004); *Johnson v. Wright*, 234 F. Supp.2d 352, 360 (S.D.N.Y. 2002); *McKenna v. Wright*, 01-CV-6571, 2002 WL 338375, at *6 (S.D.N.Y. March 4, 2002); *Carbonell v. Goord*, 99-CV-3208, 2000 WL 760751, at *9 (S.D.N.Y. June 13, 2000).  The important thing is that, in *Erickson*, even the *pro se* plaintiff was required to allege some sort of fact.

procedural rules governing the form of pleadings (as the Second Circuit has observed),[7] it does not completely relieve a *pro se* plaintiff of the duty to satisfy the pleading standards in Fed. R. Civ. P. 8, 10 and 12.[8]  Rather, as both the Supreme Court and Second Circuit have repeatedly recognized, the requirements set forth in Fed. R. Civ. P. 8, 10, and 12 are procedural rules that even *pro se* civil rights plaintiff must follow.[9]  Stated more plainly, when a plaintiff is proceeding *pro se*, " all normal rules of pleading are not absolutely suspended."  *Jackson,* 549 F. Supp.2d at 214, n.28 [citations omitted].

### C.   Summary of Plaintiff's Complaint

On October 8, 2009, Plaintiff filed her Complaint in this action.  (Dkt. No. 1.)  The text in the body of the Complaint is single spaced, and its pages are unnumbered.  (*Id*.)  In only four of

---

[7]      *Sealed Plaintiff v. Sealed Defendant #1*, 537 F.3d 185, 191 (2d Cir. 2008); *see also Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983).

[8]      *See Prezzi v. Schelter*, 469 F.2d 691, 692 (2d Cir. 1972), *cert. denied*, 411 U.S. 935, 93 S. Ct. 1911 (1973) (extra liberal pleading standard set forth in *Haines v. Kerner*, 404 U.S. 519, 92 S. Ct. 594 [1972], did not save *pro se* complaint from dismissal for failing to comply with Fed. R. Civ. P. 8); *accord, Shoemaker v. State of Cal.*, 101 F.3d 108 (2d Cir. 1996) (citing *Prezzi*, 469 F.2d at 692) [unpublished disposition cited only to acknowledge the continued precedential effect of *Prezzi* within the Second Circuit]; *accord, Praseuth v. Werbe*, 99 F.3d 402 (2d Cir. 1995); *accord Wachtler v. Herkimer County*, 35 F.3d 77, 82 (2d Cir. 1994).

[9]      *See McNeil v. U.S.*, 508 U.S. 106, 113, 113 S. Ct. 1980, 1984 (1993)("While we have insisted that the pleadings prepared by prisoners who do not have access to counsel be liberally construed . . . we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel"); *Faretta v. California*, 422 U.S. 806, 834, n.46, 95 S. Ct. 2525, 2541, n.46 (1975) ("The right of self-representation is not a license . . . not to comply with relevant rules of procedural and substantive law."); *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) ("*pro se* status does not exempt a party from compliance with relevant rules of procedural and substantive law") [citation omitted]; *accord, Traguth*, 710 F.2d at 95; *cf. Phillips v. Girdich*, 408 F.3d 124, 128, 130 (2d Cir. 2005) (acknowledging that *pro se* plaintiff's complaint could be dismissed for failing to comply with Rules 8 and 10 if her mistakes either "undermine the purpose of notice pleading []or prejudice the adverse party").

the twelve pages (specifically, pages two through five) of the Complaint does Plaintiff make any attempt at numbering paragraphs.  (*Id*. at 2-5.)  Even when she does so, she does not number the paragraphs consecutively.  (*Id*.)  Most of the paragraphs are not limited as far as practicable to a single set of circumstances, but extend to numerous sets of circumstances.  (*Id*. at 4-10.)  In the caption, Plaintiff names herself, as well as her daughter, M.O., as Plaintiffs in the action, and Catherine Bebee and the Oswego City Schools as the Defendants in the action.  (*Id*. at 1.)  However, in the body of the Complaint, Plaintiff identifies a host of other Defendants, at one point also seemingly naming M.O. as a Defendant.  (*Id*. at 3-12.)

With regard to her claims, construed with the utmost of special leniency, Plaintiff has commenced this action pursuant to 42 U.S.C. § 1983, asserting several civil rights violations.  (Dkt. No. 1, Attach. 1 [Civil Cover Sheet ].)  As summarized by Plaintiff, for example, her claims encompass "tax evasion, fraud, perjury, libel, defamation, intentional infliction of emotional distress, malpractice, negligence, invasion of privacy, violation of unlawful search and seizure, deprivation of due process, and violation of equal rights under the law . . . based upon section U.S. 42 section 1983 and 1876 . . . ."[10]  (Dkt. No. 1 at 10.)

In support of these claims, Plaintiff asserts factual allegations regarding a broad range of events occurring from the summer of 2000 to the spring of 2001, including (but not limited to) conspiracy, bribery, kidnaping, and perjury by a social worker.  (*See generally* Dkt. No. 1.)

---

[10]     Plaintiff is advised that there is no Section 1876 in volume 42 of the United States Code.  Plaintiff also references Section 1871 in the first paragraph of her Complaint, which is unrelated to civil rights, and instead addresses international cooperation and coordination of the National Science Foundation with foreign policy.  *See* 42 U.S.C. § 1871.

More specifically, Plaintiff alleges that, between approximately August of 2000 and April of 2001, Defendant Bebee, a social worker employed by the Oswego City School District, (1) conspired with six other individuals (including members of "the Baker family," who presumably reside in or near Oswego, New York) to kidnap Plaintiff's daughter on December 22, 2000, from a children's hospital in St. Petersburg, Florida, where she was receiving orthopedic medical treatment from Dr. Sheila Love, and transport her to New York, and then (2) perpetrated a fraud on an Oswego County Court in a proceeding presided over by Judge James McCarthy in April of 2001. (*Id.*)

Plaintiff further alleges that, in carrying out this conspiracy, Defendant Bebee committed the following acts: (1) she acted at the behest, and/or for the benefit, of Plaintiff's ex-husband (apparently named William Wallace), who purports to be the father of Plaintiff's daughter but who has not proved his paternity; (2) she accepted a bribe of one hundred thousand dollars ($100,000) from someone in, or associated with, the Baker family, which she intended to use for the purpose of a transgender operation; (3) she invaded Plaintiff's privacy by relying on a sealed child protection report documenting the orthopedic injury to Plaintiff's daughter, and by causing Plaintiff's home to be searched illegally; (4) she not only kidnaped Plaintiff's daughter but her two other children, whom she smuggled to a third state before bringing them to New York; (5) she falsely accused Plaintiff of child abuse; (6) she helped to somehow restrict Plaintiff's parental rights in court through use of fraud, slander and due process violations; and (7) she caused Plaintiff's daughter to be placed with the Baker family in New York, against the recommendation of her daughter's pediatrician. (*Id.*)

As relief, Plaintiff demands $1,000,000.00 in compensatory and punitive damages. (*Id.*

at 12.)

### D.    Analysis of Complaint

As an initial matter, the Court notes that the form of Plaintiff's Complaint violates

several federal and local rules.  *See*, *e.g.*, Fed. R. Civ. P. 10(a) (requiring caption to name all

defendants); Fed. R. Civ. P. 10(b) (requiring that all paragraphs be numbered sequentially, and

that each paragraph be limited as far as practicable to a single set of circumstances); N.D.N.Y.

L.R. 10.1(a) (requiring text in body of complaint to be double-spaced, and pages to be

consecutively numbered).  However, in light of the special solicitude that should ordinarily be

afforded *pro se* litigants (and because these rule violations pale in comparison to Plaintiff's other

pleading deficiencies, described below), the Court will overlook these rule violations.  The Court

does this with some hesitancy, given Plaintiff's familiarity with the pleading requirements

established the local and federal rules, due to her extraordinary litigiousness (*see*, *infra*, Part IV

of this Decision and Order).

The Court notes also that Plaintiff has filed this action not only on her own behalf, but

apparently on behalf of her child, M.O., who is a minor.  (*See* Dkt. No. 1 , at 3; Dkt. No. 2, at 2

[listing M.O. as a dependent].)  As Plaintiff previously has been repeatedly advised, M.O. may

not proceed on her own behalf.  *See* Fed. R. Civ. P. 17(c).[11]  Nor is a "*pro se*" non-attorney

permitted to represent another person in federal court litigation.  *Berrios v. New York City*

---

[11]    In *O'Neil v. Van Auser* and *O'Neil v. Ponzi-Flett,* Plaintiff named M.O. as a
plaintiff, and in both cases she was advised that M.O. must be properly represented before
commencing an action in federal court.  *See O'Neil v. Van Auser*, 5:09-CV-0594,
Memorandum-Decision and Order, at 1, n.1 (N.D.N.Y. filed July 21, 2009) (Mordue, C.J.); *see
also O'Neil v. Ponzi-Flett*, 5:09-CV-0983, Report-Recommendation, at 2 (N.D.N.Y. filed Sept.
9, 2009) (Lowe, M.J.).

*Housing Auth.*, 564 F.3d 130, 132-133 (2d Cir. 2009).  Accordingly, M.O. is dismissed as a Plaintiff in this action.

 With regard to Plaintiff's claims, many of the the factual allegations throughout the Complaint are conclusory, unsubstantiated and rambling; and there are few detailed allegations clearly identifying individual(s), dates, and specific acts of the asserted misconduct forming the basis for alleged constitutional violations.  Succinctly stated, the manner in which Plaintiff has set forth her claims is not short and plain, but so verbose, disjointed, vague and confusing that it is nearly impossible for the Court to assess them, and surely impossible for the Defendants to respond to them and prepare for trial.[12]  However, in an extension of special solicitude to Plaintiff, and an effort to provide a more detailed explanation as to why Plaintiff's Complaint is frivolous, the Court will attempt to address the bulk of Plaintiff's claims in more detail.

 **1. Section 1983 Pleading Requirements**

 Generally, to state a claim pursuant to 42 U.S.C. § 1983, a plaintiff must allege that (1) the challenged conduct was attributable at least in part to a person or entity acting under color of state law and (2) such conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States.  *Dwares v. City of New York*, 985 F.2d 94, 98 (2d Cir. 1993); *see also Torres v. Mazzuca*, 246 F. Supp.2d 334, 342 (S.D.N.Y. 2003) (quoting *West v. Atkins*, 487 U.S. 42, 48 [1988]).

---

[12] *See Rest v. Weissmane*, 08-CV-0340, 2008 WL 5191733, at *5 (N.D.N.Y. Dec. 10, 2008 (Kahn, J. adopting on *de novo* review Report-Recommendation of Lowe, M.J.) (dismissing claims that "[e]ven construed with the special solicitude," were confusing, ambiguous, vague and/or otherwise unintelligible under Federal Rules of Civil Procedure 8(a)(2) and 10(b)").

a.        **Person or Entity**

State action is an essential element of any § 1983 claim.  *See Gentile v. Republic Tobacco Co.*, 95-CV-1500, 1995 WL 743719, at *2 (N.D.N.Y. Dec. 6, 1995) (Pooler, J.) (citing *Velaire v. City of Schenectady*, 862 F. Supp. 774, 776 (N.D.N.Y. 1994) (McAvoy, C.J.) [citation omitted]). It is the plaintiff's duty to allege state action on the part of the defendants named in a complaint; and a court may dismiss an action under 28 U.S.C. § 1915(e) where a plaintiff fails to plead such a nexus.  *See, e.g., Jenkins v. Murphy,* 08-CV-0921, 2008 WL 4596197, at *2 (N.D.N.Y. Oct. 14, 2008) (McCurn, J.) [collecting cases]; *Humphrey v. Rescue Mission*, 05-CV-0795, 2005 WL 1661826, at *2 (N.D.N.Y. July 14, 2005) (Mordue, J.) [collecting cases].[13]

Here, the action is brought against Catherine Bebee and her employer, the Oswego City Schools.  Examples of Plaintiff's allegations against Bebee are as follows:

> D.  Invasion of privacy – Catherine Bebee violated, denied, and /or abridged, my privacy under the colors of state laws by misusing and abusing her job position and leaving her jurisdiction, Freeman v. Rideout, 808 F 2d 949 (2d CIR.1986).
>
> 3.  Negligence – because Catherine Bebee failed to verify the validity of a court order, paternity order, and her own job duties before leaving the state of New York, Catherine Bebee is also negligent because the injury to [M.O.] was unfounded and legally sealed, in which Catherine Bebee, a social worker, has total access to a founded or unfounded report, and even if it was founded, it does not entitle Catherine Bebee to travel to the State of Florida as the state of Florida, in their own jurisdiction, has their own social workers, to handle their own investigations based upon findings of Dr. Sheila Love, as Sheila Love was assigned to treat patient [M.O.]

---

[13]        *See also DeMatteis v. Eastman Kodak Co.*, 511 F.2d 306, 311 (2d Cir.) (affirming dismissal of complaint where plaintiff failed to include allegations of state action in complaint), *modified on other grounds,* 520 F.2d 409 (2d Cir.1975); *Lawson v. Abrams*, 84-CV-4325, 1988 WL 49244, at *4 (E.D.N.Y. May 6, 1988) (dismissing as frivolous pro se complaint where plaintiff failed to allege state action on part of defendants), *accord, Carollo-Gardner v. Diners Club*, 628 F. Supp. 1253, 1256-57 (E.D.N.Y. 1986).

> Catherine Bebee is not assigned, she has no jurisdiction over [M.O.] and there needs to be a clear, definitive ruling stating Catherine Bebee has no jurisdictional authority over said child, and will never have any.  It is very important to establish this factor, because the pattern of retaliation is only continuing so said child cannot attend public school. . . .

(Dkt. No. 1, at 3-4.)

> Catherine Bebee, while under oath, under the penalties of perjury, in front of Judge James McCarthy, stated she was paid a large sum of money to travel to Florida and take said children after a careful conspiracy and several meetings to carefully plan out this act.  Catherine Bebee stated she was paid an excessive $100,000.00 and was going to use this money for the purpose a transgender operation, in which she felt entitled to undertake by causing trauma and harm to my home and my family.

(Dkt. No. 1, at 5.)

For the sake of brevity, the Court will assume that Plaintiff has alleged facts plausibly suggesting that Defendant Bebee was acting in her capacity as a state actor when she committed the acts in question.  Again, the Court does this with some hesitancy, given the fact that it is not clear in what position with the school district Defendant Bebee was acting which would have conferred upon her duties regarding Plaintiff's daughter during the time in question (or even that she was employed by a municipal entity rather than some private non-profit organization).[14]

More problematic is Plaintiff's claim against the Oswego City School District.  As an initial matter, to the extent that Plaintiff seeks to impose liability on the City of Oswego or the Oswego City School District, there are no factual allegations plausibly suggesting liability by either entity.  Moreover, "[a]lthough municipalities are within the ambit of section 1983, municipal liability does not attach for actions undertaken by city employees under a theory of *respondeat superior*."  *Birdsall v. City of Hartford*, 249 F. Supp.2d 163, 173 (D. Conn. 2003)

---

[14]     Indeed, the Court notes that Plaintiff alleges that Defendant Bebee had no professional relationship with Plaintiff's daughter.  (Dkt. No. 1 at 5-6.)

13

(citing *Monell v. New York City Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691, 98 S. Ct. 2018, 2036 [1978]).

However, despite the fact that *respondeat superior* liability does not lie, a municipal entity can be held accountable for a constitutional violation which has occurred pursuant to "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [the municipality's] officers . . . [or] pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision making channels." *Monell*, 436 U.S. at 690-91, 98 S. Ct. at 2036. Such municipal liability can be alleged in a case as this in various ways including, *inter alia*, through allegation of an officially adopted rule or widespread, informal custom plausibly suggesting "a deliberate government policy or failing to train or supervise its officers." *Bruker v. City of New York*, 337 F. Supp.2d 539, 556 (S.D.N.Y. 2004) (citing and quoting *Anthony v. City of New York*, 339 F.3d 129, 140 [2d Cir. 2003]). A plaintiff may also allege such municipal liability by alleging facts plausibly suggesting that municipal officers have acquiesced in or condoned a known policy, custom or practice. *Jeffes v. Barnes*, 208 F.3d 49, 57 (2d Cir.), *cert. denied*, *County of Schenectady v. Jeffes*, 531 U.S. 813, 121 S. Ct. 47 (2000); *Wenger v. Canastota Cent. Sch. Dist.*, 95-CV-1081, 2004 WL 726007, at *3 (N.D.N.Y. Apr. 5, 2004) (Scullin, C.J.).

Here, the Complaint is devoid of factual allegations that plausibly suggest liability against the Oswego City School District. Again, it is unclear that Defendant Bebee is employed by that entity (as opposed to being employed by Oswego County or some private non-profit organization). For example, at least one portion of the Complaint alleges that Defendant Bebee is employed by *Oswego County*. (*See* Dkt. No. 1, at 9-10.) In addition, and more importantly,

there are no factual allegations plausibly suggesting that, at the time of the alleged constitutional violations, Defendant Bebee was acting pursuant to an official custom, policy, or practice of the Oswego City School District.  Rather, the Complaint rather explicitly alleges that Defendant Bebee was acting outside of her authority and pursuant to employment by the Baker Family.

For all these reasons, Plaintiff's claims against Defendant Oswego City School District are dismissed for frivolousness.

### b.      Right, Privilege, or Immunity Secured by the Constitution

As to the constitutional violations asserted in Plaintiff's Complaint, references to constitutional rights and amendments are generally confined to five of the twelve pages of the Complaint.  (*See generally* Dkt. No. 1, at 1-3, 5, 10.)  More specifically, construed with the utmost liberality, Plaintiff's Complaint asserts that Defendant Bebee violated her following three constitutional rights: (1) her right to privacy under the Fourth Amendment; (2) her right to procedural due process under the Fourteenth Amendment; and (3) her right to equal protection of the laws under the Fourteenth Amendment.  (*Id*.)  In addition, Plaintiff asserts a conspiracy claim under 42 U.S.C. § 1983.  (*Id*. at 2, 7-10.)[15]

With regard to Plaintiff's right-to-privacy claim under the Fourth Amendment, Plaintiff alleges that this violation occurred when the following acts occurred: (1) her home, in an

---

[15]      The Court notes that Plaintiff also asserts several claims arising under New York State law, including (but not limited to) negligence, fraud, defamation, invasion of privacy, malpractice, breach of confidentiality, and intentional infliction of emotional distress.  (*Id*. at 3-6, 10.)  However, because a cause of action under 42 U.S.C. § 1983 may not be premised solely on a violation of state law (but requires a violation of either the United States Constitution or a federal statute), and because the Court would decline to exercise supplemental jurisdiction over any of Plaintiff's pendent state law claims, the Court need not, and will not, analyze these claims in this Decision and Order.

unspecified city and state, was illegally searched at an unspecified time by an unspecified

individual; and (2) Defendant Bebee relied on a sealed child protection report documenting the

orthopedic injury to Plaintiff's daughter, in her effort to kidnap Plaintiff's daughter, transport her

from Florida to New York, and/or somehow restrict Plaintiff's parental rights.  (*Id*. at 1-2, 4-5.)

The first act is simply too vague and speculative to plausibly suggest a Fourth Amendment

violation by Defendant Bebee.  The second act, as alleged, does not give rise to a Fourth

Amendment violation for three reasons: (1) it is highly questionable whether the act plausibly

constitutes a violation of N.Y. Social Services Law § 422-a, which permits disclosure of a sealed

child protection report by a social services commissioner under certain circumstances; (2) even if

the act does plausibly constitute such a violation, a violation of state law does not, in and of

itself, give rise to a violation of 42 U.S.C. § 1983, which requires a violation of either the United

States Constitution or a federal statute;[16] and (3) even if the act does give rise to a constitutional

violation, it is highly questionable whether Plaintiff has standing to assert that violation, because

the report concerned Plaintiff's *daughter* (and Plaintiff is as a *pro se* litigant who cannot litigate

the claim on behalf of her daughter).

    With regard to Plaintiff's due process claim under the Fourteenth Amendment, Plaintiff

alleges that Defendants failed to give any her notice and an opportunity to be heard (including an

opportunity to present evidence and witnesses such as medical experts), presumably in a legal

proceeding in Family Court in Oswego County to terminate Plaintiff's parental rights and/or

modify her visitation rights.  (*Id*. at 1-2.)  This vague allegation does not allege facts plausibly

---

[16]     In addition, the Court notes that New York Social Service Law § 419 grants immunity to individuals, officials and institutions for making good faith reports and other related actions from any liability, civil or criminal.  N.Y. Soc. Serv. Law § 419.

suggest how much process was due because it does not allege in what type of proceeding Plaintiff was denied procedural protections (e.g., a modification of Plaintiff's visitation rights, a termination of Plaintiff's parental rights, a temporary removal of Plaintiff's daughter with the written consent of the person legally responsible for her care, a preliminary order of removal of Plaintiff's daughter after a petition is filed, a preliminary order of removal of Plaintiff's daughter before a petition is filed, or an emergency removal of Plaintiff's daughter without a court order). Indeed, based on Plaintiff's other factual allegations, it is plausible that the proceeding was permitted to be conducted *ex parte*.  It is even conceivable that Plaintiff did not even have standing to participate in the proceeding.

With regard to Plaintiff's equal protection claim under the Fourteenth Amendment, Plaintiff alleges that Defendant Bebee treated Plaintiff unequally under the law by exceeding the scope of her job duties to (1) invade Plaintiff's privacy, (2) travel to Florida to kidnap her daughter, and (3) "impact" Plaintiff by traumatizing her daughter, and depriving her daughter of medical treatment in New York State.  (*Id.* at 2-5.)  To assert an equal protection claim, a plaintiff must allege facts plausibly suggesting that she was intentionally treated differently from others similarly situated as a result of intentional or purposeful discrimination directed at an identifiable or suspect class.  Where the alleged classification involves a "suspect class" or "quasi-suspect class," the alleged classification is subject to "strict scrutiny" by a court. Otherwise, the alleged classification is subject to only "rational basis scrutiny."  To survive such scrutiny, the alleged classification need only be "rationally related" to a "legitimate state interest."

Here, Plaintiff has not even alleged facts plausibly suggesting there has been any

*classification* at all in this case, i.e., that she was intentionally treated differently from others similarly situated as a result of intentional or purposeful discrimination directed at an identifiable or suspect class. (Rather, she alleges that Defendant Bebee acted differently compared to other social workers.) Moreover, even if Plaintiff had alleged facts plausibly suggesting that she was treated differently from others, she has not alleged facts plausibly suggesting that the alleged discrimination she experienced was not rationally related to a legitimate state interest (i.e., protecting Plaintiff's daughter by returning her to lawful custodians in New York State).

With regard to Plaintiff's conspiracy claim under 42 U.S.C. § 1983, she alleges that, between approximately August and December of 2000, Defendant Bebee conspired with numerous members of "the Baker family" to kidnap Plaintiff's daughter on December 22, 2000, from a children's hospital in St. Petersburg, Florida, and transport her to New York. (*Id*. at 2, 7-10.) More specifically, Plaintiff alleges that this conspiracy possessed the following characteristics: (1) it was perpetrated by seven individuals; (2) it was motivated, in part, by revenge against Plaintiff for causing the "drug bust" of one of the conspirators; (3) it was motivated also by the certain other conspirators' need for money to satisfy illegal gambling debts and to pay for a transgender operation; (4) it was preceded by witness tampering and extortion by one of the conspirators, and the making of a death threat to Plaintiff by another of the conspirators while Plaintiff was approximately eight months pregnant; (5) it culminated in the making of a bribe of $100,000 to Defendant Bebee, and a bribe of an unspecified amount to two other conspirators; and (6) it was followed by tax evasion by at least five of the seven conspirators. (*Id*.)

To sustain a conspiracy claim under § 42 U.S.C. 1983, a plaintiff must demonstrate that a

18

defendant "acted in a wilful manner, culminating in an agreement, understanding or meeting of the minds, that violated the plaintiff's rights . . . secured by the Constitution or the federal courts." *Malsh v. Austin*, 901 F. Supp. 757, 763 (S.D.N.Y. 1995) (citations and internal quotation marks omitted).  Conclusory, vague, or general allegations of a conspiracy to deprive a person of constitutional rights do not state a claim for relief under section 1983.  *See Sommer v. Dixon*, 709 F.2d 173, 175 (2d Cir.), *cert. denied*, 464 U.S. 857 (1983).

Here, the only factual allegation contained in Plaintiff's Complaint that plausibly suggests a "meeting of the minds" between Defendant Bebee and any of the other six alleged conspirators is her receipt–at an unspecified place and time from an unidentified individuals–of $100,000 for a transgender operation.  (Dkt. No. 1, at 2, 7-10.)  These pleading deficiencies–which render his claim vague and conclusory–are fatal to Plaintiff's conspiracy claim.  *See Polur v. Raffe*, 912 F.2d 52, 56 (2d Cir. 1990), *cert. denied*, 499 U.S. 937 (1991); *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987); *Warren v. Fischl,* 33 F. Supp. 2d 171, 177 (E.D.N.Y. 1999).

For all these reasons, Plaintiff's claims against Defendant Bebee are dismissed for frivolousness.[17]

---

[17]     The Court notes that Plaintiff's Complaint also raises the specter of a claim under a federal statute known as the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), Pub. L. 104-191, 110 Stat. 1936 (1996).  HIPAA was enacted by Congress in order to protect against unwarranted disclosure of health records and information, authorizing the Secretary for Health and Human Services "to make final regulations concerning the privacy of individually identifiable health information." *Barnes v. Glennon,* 05-CV-0153, 2006 WL 2811821, at *5 (N.D.N.Y. Sept. 28, 2006) (*citing and quoting Nat'l Abortion Fed'n v. Ashcroft,* 03-CV-8695, 2004 WL 555701, at *2 [S.D.N.Y. Mar. 19, 2004], and 42 U.S.C. §§ 1320d through 1320d-8).  Courts addressing claims similar to the claim implicitly raised by Plaintiff have determined that, in light of the availability of monetary and criminal penalties to be assessed by the Secretary of Health and Human Services or the State, *see* 42 U.S.C. § 1320d-6(b), the statute does not confer an independent private right of action.  *See Barnes,* 2006 WL

2.      **Statute of Limitations**

Even when construed with the utmost of special leniency, the events giving rise to

Plaintiff's claims occurred between approximately August of 2000 (when the conspirators

started meeting about Plaintiff) and April of 2001 (when Defendant Bebee perpetrated a fraud on

an Oswego County Court in a proceeding presided over by Judge James McCarthy in April of

2001.  (Dkt. No. 1, at 3-8, 10.)

"The applicable statute of limitations for § 1983 actions arising in New York requires

claims to be brought within three years."  *Pinaud v. County of Suffolk*, 52 F.3d 1138, 1156 (2d

Cir. 1995) [citations omitted]; *see also Connolly v. McCall*, 254 F.3d 36, 40-41 (2d Cir. 2001)

("[Plaintiff's] federal constitutional claims, brought pursuant to 42 U.S.C. § 1983, are governed

by New York's three-year statute of limitations for personal injury actions . . . .") [citations

omitted].  A claim arising under Section 1983 accrues "when the plaintiff knows or has reason to

know of the harm that he seeks to redress."  *Connolly v. McCall*, 254 F.3d 36, 41 (2d Cir. 2001)

[internal quotation marks and citation omitted], *accord*, *Pearl v. City of Long Beach*, 296 F.3d

76, 80 (2d Cir. 2002) [internal quotation marks and citations omitted].

Here, the three-year limitations period started running, at the latest, in April of 2001, and

---

2811821, at \*5-6; *Cassidy v. Nicolo,* 03-CV-6603, 2005 WL 3334523, at \*5-6 (W.D.N.Y. Dec. 7, 2005); *see also Pecou v. Forensic Committee Personnel,* 06-CV-3714, 2007 WL 1490450, at \*2 (E.D.N.Y. Jan. 5, 2007).  Courts presented with the issue also have held that, because HIPAA does not create a private right, it cannot be privately enforced via Section 1983.  *Adams v. Eureka Fire Protection Dist.*, 09-CV-1315, 2009 WL 3352032, at \*1 (8th Cir. Oct. 15, 2009); *see also, Auld v. Davidson*, No. 08-3110-TC, 2009 WL 1559777, at \* 1 (D. Or. June 2, 2009); *Howard v. Douglas County Jail*, No. 09-3085-SAC, 2009 WL 1504733, at \* 4 (D. Kan. May 28, 2009); *Frazier v. Arkansas Dept. of Corr.*, 07-CV-00184,2009 WL 856990, at \*9 (E.D. Ark. Mar. 30, 2009).   Accordingly, the Court finds that any alleged HIPAA violations will not support Plaintiff's Section 1983 claim, and, to the extent her Complaint is construed as asserting a cause of action under HIPAA, the claim is subject to dismissal as a matter of law.

expired, at the latest, in April of 2004.  Under the circumstances, the applicable three-year

limitations period clearly bars Plaintiff's claims.  The Court notes that Plaintiff, an experienced

*pro se* litigant who has had similar if not identical claims barred due to untimeliness, was, when

she filed this action, undoubtedly aware of this limitation period.  *See, e.g.*, *O'Neil v. Oswego*

*County Family Court*, 07-CV-6016, Decision and Order, at 11-12 (W.D.N.Y. filed Feb. 20,

2007); *O'Neil v. Fulton Police Dept.*, 07-CV-6045, Decision and Order, at 1, 16 (W.D.N.Y. filed

Feb. 28, 2007); *O'Neil v. N.Y.S. Dept. of Educ.*, UID 2007-038-526, Decision (N.Y. Ct. Cl. filed

March 30, 2007).

    For this alternative reason, Plaintiff's claims against Defendants are dismissed for

frivolousness.

### 3.    Res Judicata and Collateral Estoppel

    In the following three cases, Plaintiff's claims against Defendant Bebee and Oswego City

Schools were previously dismissed on multiple grounds, including untimeliness: (1) *O'Neil v.*

*Oswego County Family Court*, 07-CV-6016, Decision and Order, at 10-12 (W.D.N.Y. filed Feb.

20, 2007) (dismissing Plaintiff's claims against Defendants Bebee and Oswego City Schools

based on untimeliness and lack of federal jurisdiction); (2) *O'Neil v. State of New York*, 07-CV-

0071, Decision and Order, at 6-7 (N.D.W. Va. filed July 19, 2007) (dismissing Plaintiff's claims

against Defendants Bebee and City of Oswego for lack of federal jurisdiction); and (3) *O'Neil v.*

*N.Y.S. Dept. of Educ.*, UID 2007-038-526, Decision (N.Y. Ct. Cl. filed March 30, 2007)

(dismissing Plaintiff's claims against Defendant Bebee as untimely pursuant to, *inter alia*, New

York State's three-year statute of limitations governing certain of those claims).

    For this alternative reason, Plaintiff's claims against Defendants are dismissed for

frivolousness.

### 4.    Nature of Dismissal

Generally, when a *pro se* action is dismissed *sua sponte*, the plaintiff should be allowed

to amend his or her complaint once before their complaints are dismissed.  *See Gomez v. USAA*

*Fed. Savings Bank*, 171 F.3d 794, 796 (2d Cir. 1999).  However, such leave is not required

where any amended complaint would be futile due to the substantive nature of the fatal flaws in

the original complaint.[18]  Here, the flaws in Plaintiff's Complaint are substantive in nature such

that better pleading would not cure them.  As a result, the Court finds that it would be futile to

afford Plaintiff an opportunity to amend her Complaint.

## III.    PLAINTIFF'S MOTION FOR STAY AND TWO LETTER REQUESTS

Plaintiff's motion to stay the proceedings is rendered moot by the Court's dismissal of

Plaintiff's action with prejudice due to its frivolousness.  As a result, that motion is denied as

moot.  In the alternative, that motion is denied as procedurally improper in that it is unsupported

by an affidavit, as required by Local Rule 7.1(a).  Moreover, that motion is denied on the second

alternative ground that it is unsupported by a showing of cause.  (Dkt. No. 3.)  Specifically,

Plaintiff appears to be requesting that this action be stayed "in order to criminally arrest

employees required to mandate abuse and were allegedly involved in human trafficking, . . . ."

(*Id.* at 2.)  Finally, as for Plaintiff's two letters requesting requested that the Clerk issue

summonses for service upon Defendants, in light of the foregoing, those requests are denied as

---

[18]      *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (an opportunity to amend should be denied where "the problem with [plaintiff's] causes of action is substantive" such that "[b]etter pleading will not cure it."); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.") [citation omitted].

moot.  (Dkt. Nos. 4, 5.)

IV.     **ORDER TO SHOW CAUSE**

A review of Plaintiff's litigation history reveals that, in addition to filing the current

action in this District, she has filed five (5) other *pro se* civil rights actions in this District: (1)

*O'Neil v. Diskey*, 5:09-CV-0540, Complaint (N.D.N.Y. filed on May 7, 2009) (transferred by

Suddaby, J., to the Middle District of Florida on May 20, 2009); (2) *O'Neil v. Van Auser*, 5:09-

CV-0594, Complaint (N.D.N.Y. filed on May 20, 2009) (dismissed for lack of subject matter

jurisdiction by Mordue, C.J., on July 21, 2009); (3) *O'Neil v. Ponzi-Flett*, 5:09-CV-0983,

Complaint (N.D.N.Y. filed on Aug. 28, 2009) (dismissed for frivolousness by Suddaby, J., on

February 9, 2010); (4) *O'Neil v. Ponzi*, 5:09-CV-0985, Complaint (N.D.N.Y. filed on Aug. 28,

2009) (dismissed as duplicative by Suddaby, J., on Oct. 22, 2009); and (5) *O'Neil v. Pasco*

*County*, 5:09-CV-1175, Complaint (N.D.N.Y. filed on Oct. 21, 2009) (transferred by Suddaby,

J., to the United States District Court for the Middle District of Florida on December 7, 2009).

Moreover, a review of the Federal Judiciary's Public Access to Court Electronic Records

("PACER") reveals that Aimee O'Neil has filed some forty (40) *pro se* civil rights actions in

other federal courts across the country.  These actions include thirty-two (32) *pro se* civil actions

filed in the Western District of New York in 2007 (eighteen of which were filed in the same

week).  These actions also include seven (7) *pro se* civil actions filed in the Northern District of

West Virginia.  These actions also include two (2) *pro se* civil actions filed in the Middle District

of Florida.  Finally, these actions include one (1) *pro se* civil actions filed in the Western District

of Michigan.

All of Plaintiff's actions filed in the Western District of New York were *sua sponte*

dismissed with prejudice as frivolous.  *See O'Neil v. Fulton Police Dept.*, 07-CV-6045, Decision and Order, at 7-18 (W.D.N.Y. filed Feb. 28, 2007).  Similarly, all of Plaintiff's actions filed in the Northern District of West Virginia were *sua sponte* dismissed with prejudice as frivolous.  *See O'Neil v. Cornerstone Homes*, 07-CV-0069, 2007 WL 2116410, at *1-5 (N.D. W.V. July 19, 2007), *aff'd by O'Neil v. Oswego County Dept. of Soc. Servs.*, 258 F. App'x 581 (4th Cir. Dec. 17, 2007).  As for Plaintiff's three remaining actions in other districts, two were *sua sponte* dismissed (the third having been filed merely a month ago).  Finally, it is important to note that many of the forty-six (46) *pro se* civil actions that Plaintiff has filed have been duplicative in nature.  Indeed, the current action is duplicative in nature.  *See*, *supra*, Part II.3. of this Decision and Order.

Under such circumstances, a federal district court may impose a reasonable filing restriction on a *pro se* litigant in that particular court, pursuant to Fed. R. Civ. P. 11, 28 U.S.C. § 1651(a), and its inherent authority to control and manage its own docket so as to prevent abuse in its proceedings.  For example, a federal district court may, after providing an appropriate opportunity to be heard, prohibit a vexatious litigant from filing, in that particular court, any action *pro se* (that is, without counsel), without prior leave of that court.  *See Hong Mai Sa v. Doe*, 406 F.3d 155, 158 (2d Cir. 2005) ("If a litigant has a history of filing vexatious, harassing or duplicative lawsuits, courts may impose sanctions, including restrictions on future access to the judicial system.") [internal quotations and citations omitted]; *In re Sassower*, 20 F.3d 42, 44 (2d Cir. 1994) (where a *pro se* plaintiff has demonstrated a "clear pattern of abusing the litigation process by filing vexatious and frivolous complaints," a "leave to file" requirement may be instituted by the court as an appropriate sanction); *Moates v. Barkley*, 147 F.3d 207, 208

(2d Cir. 1998) ("[T]he district court may not impose a filing injunction on a litigant *sua sponte* without providing the litigant with notice and an opportunity to be heard."); *Azubuko v. Unknown Boston Police Officers*, 08-CV-0330, 2008 WL 1767067, at *1 (N.D.N.Y. Apr. 16, 2008) (McCurn, J.).

It is worth noting that at least two federal district courts have imposed such a restriction on Plaintiff. *See O'Neil v. Fulton Police Dept.*, 07-CV-6045, Decision and Order, at 18-20 (W.D.N.Y. filed Feb. 28, 2007); *O'Neil v. Cornerstone Homes*, 07-CV-0069, 2007 WL 2116410, at *6 (N.D. W.V. July 19, 2007), *aff'd by O'Neil v. Oswego County Dept. of Soc. Servs.*, 258 F. App'x 581 (4th Cir. Dec. 17, 2007).

Because of her history of filing vexatious, harassing or duplicative lawsuits, Plaintiff is hereby warned that the Court will not tolerate the filing of frivolous actions by her in the future. As a result, she is directed to show cause, within thirty (30) days of the date of this Decision and Order, as to why this Court should not issue an Order barring her from filing any future *pro se* actions without first obtaining leave of the Court.  In the event that Plaintiff fails to show such cause, she will be prohibited from filing, in this Court, any action *pro se* (that is, without counsel), without prior leave of the Court, pursuant to Fed. R. Civ. P. 11, 28 U.S.C. § 1651(a) and the Court's inherent authority to control and manage its own docket so as to prevent abuse in its proceedings.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion to proceed *in forma pauperis* (Dkt. No. 2) is **GRANTED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is *sua sponte* **DISMISSED** **with**

**prejudice** due to its frivolousness, pursuant to 28 U.S.C. § 1915(e)(2)(B)(i),(ii); and it is further

**ORDERED** that Plaintiff's motion for a stay (Dkt. No. 3) is **DENIED**; and it is further

**ORDERED** that Plaintiff's requests that the Clerk issue summonses for service upon the

Defendants (Dkt. Nos. 4, 5) are **DENIED**; and it is further

**ORDERED** that Plaintiff is hereby directed to **SHOW CAUSE**, within **THIRTY (30)**

**DAYS** of the date of this Decision and Order, why this Court should not issue an Order barring

her from filing any future *pro se* actions in this Court without first obtaining leave of the Court.

In the event that Plaintiff fails to show such cause, she will be **PROHIBITED** from filing, in this

Court, any action *pro se* (that is, without counsel) without prior leave of the Court, pursuant to

28 U.S.C. § 1651(a) and the Court's inherent authority to control and manage its own docket so

as to prevent abuse in its proceedings.

The Court hereby certifies, for purposes of 28 U.S.C. § 1915(a)(3), that any appeal taken

from the Court's final judgment in this action would not be taken in good faith.

Dated: February 9, 2010
       Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge

26